ESTATE OF CLARENCE D. FLEMING, DECEASED, DOROTHY C. FLEMING, EXECUTRIX, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Fleming v. Commissioner
Docket No. 2878-73.
United States Tax Court
T.C. Memo 1974-307; 1974 Tax Ct. Memo LEXIS 11; 33 T.C.M. (CCH) 1414; T.C.M. (RIA) 740307; December 12, 1974, Filed. Daniel Hartnett, for the petitioner. Robert E. Lee, for the respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: In this case respondent has determined a deficiency in estate tax in the amount of $2,364.47. Concessions have been made, and two issues remain for our consideration: 1. Where decedent and others (his son and his wife) owned certain property as joint tenants with a right *12 of survivorship, and only one-third of such property originally belonged to the others, what portion of the value of the property is includable in the decedent's gross estate? 2. Where an estate holds publicly traded stocks selling ex-dividend on the alternate valuation date elected in accordance with section 2032, [1] and that date comes after a declaration of dividends, but before the "shareholders of record" date, does the value of the stock include the amount of the dividends declared? FINDINGS OF FACT All of the facts have been stipulated and are so found. Decedent Clarence D. Fleming died on November 10, 1968. His widow, Dorothy C. Fleming, is the executrix of his estate, and she resided in New Church, Virginia, at the time the petition was filed. The estate tax return was filed with the district director of internal revenue, Hartford, Connecticut. Among the assets of the estate were 766 shares of General Motors Corporation common stock (GM stock) and 901 shares of Standard Oil of New Jersey common stock (SO stock). None of this stock was disposed of within *13 the year following decedent's death. Having elected the alternate valuation date pursuant to section 2032, the estate valued this stock on November 10, 1969. On November 10, 1969, the New York Stock Exchange quoted the following prices for the stock: High
Low
Mean
GM stock
74-7/8
74-3/8
75-5/8
SO stock
75-3/8
64-5/8
65
On November 10, 1969, both the GM stock and the SO stock were selling ex-dividend according to the following schedule: Div.
Declared
Ex-Div.
Record Date
Payable
GM stock
$1.50
11/3/69
11/6/69
11/13/69
12/10/69
SO stock
$1.05
10/30/69
11/5/69
11/12/69
12/10/69
Also included among the assets of the estate was decedent's interest in certain real property. As of December 31, 1964, decedent and his wife were shareholders and creditors of C.D. Fleming and Son, Inc. On December 31, 1964, the corporation was dissolved, and decedent and his wife received 20 parcels of real estate as tenants in common in exchange for all of their stock and notes. The decedent held an undivided two-thirds interest in the property; his wife held the remaining undivided one-third *14 interest. On January 7, 1965, decedent and his wife conveyed the property to a straw man who in turn, on the same day, conveyed the property to decedent, his wife and his son as joint tenants with the right of survivorship. The son gave no consideration for the conveyance of the joint interest to him, and the decedent and his wife reported the gift on a Federal gift tax return. These 20 parcels were included in decedent's estate tax return but only one-third of their value was shown as taxable. By his determination the Commissioner doubled this taxable value by including the entire value of the parcels "except the one-third part attributable to the total amount of consideration determined to have been furnished * * * by the other joint owners." OPINION The first issue presented for our consideration is whether two-thirds of the value of the above 20 parcels of real estate is includable in the decedent's gross estate. Little can or will be said about this issue. Petitioner argues (as to the son's one-third joint interest) that only the actuarial value of the decedent's reversionary interest therein should be included in the decedent's gross estate. Petitioner cites no authority *15 in support of its contention, and indeed, cannot, for there is none. The unadorned language of section 2040 provides: The value of the gross estate shall include the value of all property to the extent of the interest therein held as joint tenants by the decedent and any other person * * * except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth * * * Respondent's determination did this with precision by exempting the one-third shown to have belonged to the wife and not to have been received from decedent. We hold for respondent on this issue. See also section 20.2040-1(a) (2), Estate Tax Regs.; Foster v. Commissioner, 90 F.2d 486 (C.A. 9, 1937), affirmed per curiam 303 U.S. 618 (1938). The second issue before this Court has also been long settled. When the section 2032 alternate valuation date falls between the date on which dividends are declared and the "shareholders of *16 record" date, should the value of the stock include the amount of dividends declared? The petitioner, citing no authority, argues that the value of the stock for estate tax purposes should be the price quoted on the public exchange for the stock selling ex-dividend. Respondent points to Rev. Rul. 60-124, 1960-1 C.B. 368, which is on all fours with the instant case and which states that the value of the stock should include the amount of the declared dividends. We must hold for the respondent. The dividends themselves are not includable in the gross estate. Section 20.2032-1(d) (4), Estate Tax Regs.; cf. Estate of Putnam v. Commissioner, 324 U.S. 393 (1945); Estate of George McNaught Lockie, 21 T.C. 64 (1953). However, on the valuation date the stock held by the estate carried rights to the declared dividends while the same stocks being traded on the New York Stock Exchange were selling ex-dividend. As we stated in Estate of George McNaught Lockie, supra at 66-67: *17 The amount of the dividend should not be included in his estate in addition to the value of his shares at the date of his death, which value would include the right which those shares then carried to the dividend and, no doubt, would be greater than the value of other shares carrying no rights to the dividend selling "ex dividend" on the date of his death. In Lockie the dividend was declared before the decedent died, but the shareholders of record date fell after his death. The stock was includable in his gross estate though the dividends were not because he personally never had a right to the dividends. Although the issue of value was not before us, we said at 67: Obviously the price at which other stock was being sold on that day "ex dividend" would not be a proper measure of the value of this stock from which the dividend rights had not been separated. * * * See also Rev. Rul. 54-399, 1954-2 C.B. 279. In this case we sustain respondent's position, as stated in Rev. Rul. 60-124, 1960-1 C.B. 368, that stock includable in the gross estate, selling ex-dividend *18 on the alternate valuation date should be valued at the ex-dividend selling price increased by the amount of declared dividends. See section 20.2031-2(i), Estate Tax Regs.; Estate of Hattie L. McNary, 47 T.C. 467 (1967). To reflect concessions, Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, unless otherwise specified. ↩